SULFUR–TECH WATER SYSTEMS, INC., Plaintiff

v.

Larry and Sandra KOHLENBERG, d/b/a LWC, Inc., Defendant

No. 3:00CV7365.

United States District Court, N.D. Ohio, Western Division.

Sept. 4, 2002.

Donald A. Schurr, Marshall & Melhorn, Michael S. Scalzo, Stephan P. Evans, Marshall & Melhorn, Toledo, OH, for Plaintiff.

David D. Murray, Brinks, Hofer, Gilson & Lione, Ann Arbor, MI, W. David Arnold, Arnold & Caruso, Toledo, OH, for Defendant.

## ORDER

CARR, District Judge.

This is a patent infringement case in which, following a *Markman* determination, the plaintiff has filed a motion for summary judgment on the issue of infringement. For the reasons that follow, the motion shall be denied.

The plaintiff, Sulfer–Tech Water Systems, Inc., holds United States Patent No. 5,744,040 (the '040 patent), which is a methods and apparatus patent relating to the removal of hydrogen sulfide from water. The defendants, Larry and Sandra Kohlenberg, doing business as LWC, Inc., also produce and sell a device for removal of compounds, including hydrogen sulfide, from water. Mr. Kohlenberg has been issued United States Patent No. 6,103,108 (the '108 patent) for defendants' method and apparatus.

Both devices receive inflows of untreated water and pressurized air, mix the two substances so that the water becomes aerated (*i.e.*, the air dissolves in the water), force the aerated water through an atomizer, which causes the aerated water to become a mist, and enter into the first in a series of upright cylindrical tanks. By turning the aerated water into a mist, the atomizer enable the oxygen in the air and hydrogen sulfide in the water to form sulfate.

The sulfate and water falls to the bottom of the first tank and are caused to flow into one or more additional tanks to filter out the sulfate. The treated water then flows into another tank to be deaerated, after which it is available for use.

The principal issue in dispute is whether aeration of the untreated water occurs at the same point in its flow in both the plaintiff's device and the defendants' alleged infringing device. Plaintiff contends that aeration occurs in an inlet channel immediately prior to the passage of the air/water mixture into the atomizer, while the defendants contend that aeration occurs before it enters the inlet channel of the alleged infringing device.

Plaintiff claims that the Kohlenberg device infringes its patent. In response, defendants argue that the plaintiff is seeking improperly to show that the Kohlenberg patent, rather than the method and apparatus that are the subject of that patent, infringes plaintiff's patent. Defendants also contend that their device does not read on (i.e., encompass) the claims of plaintiff's patent. Both parties challenge the admissibility of some of the evidence on which the other relies in the summary judgment briefs.

Before turning to the admissibility issues, there are some procedural and substantive issues that can be resolved without regard to the admissibility of evidence.

■ First, defendants claim that plaintiff's motion for summary judgment is premature because little discovery has occurred, and no depositions have been taken. Defendants have not, however, suggested what discovery is needed for them to respond to, or me to adjudicate the plaintiff's motion. I conclude, accordingly, that the motion, as presented, is not premature.

■ Next, I reject defendants' contention that the plaintiff is seeking to show that the Kohlenberg patent infringes plaintiff's patent. That contention is based on the fact that plaintiff, in its effort to show infringement, initially compared the figures and description of defendant's device, as found in the Kohlenberg patent to the claims in plaintiff's patent. That was

done, in my view, for illustrative purposes, to describe defendant's device as defendants themselves described it, and thereby to show that the device infringes plaintiff's patent. I find nothing improper in that approach, which, in any event, plaintiff has supplemented with photographs, which can be examined in lieu of the defendants' description in Kohlenberg patent, of one of allegedly infringing devices.

■ Defendants oppose the motion for summary judgment, in part, on the basis that they retrofitted the devices that were sold prior to August, 2000, and since October, 2000, have only sold devices whose design has been altered. Be that as it may, such retrofit and any design changes are not a defense to plaintiff's claim that the devices sold by defendants prior to then, even if later retrofitted, infringed plaintiff's patent.

■ Defendants also contend that their devices do not infringe because a substantial number of their devices remove impurities other than hydrogen sulfide, whereas plaintiff's device removes only that substance. Even if that is so, that is likewise is not a defense to a claim that those of defendants' devices that remove hydrogen sulfide infringe plaintiff's patent.

■ With regard to issues of admissibility, defendants claim that the tests conducted by plaintiff's expert, Dr. William Schultz, were flawed and thus are unreliable. In his affidavit, Dr. Schultz states that aeration of the water occurs in inlet channel of the allegedly infringing device, rather than at an earlier point. Aeration in the inlet channel, Dr. Schultz further stated, violates claims one and seven of the plaintiff's patent.

Defendants' expert, Dr. John Foss, states that the method by which Dr. Schultz determined the degree of aeration was insufficient to lead to reliable results. In response to this contention, plaintiff has submitted a second affidavit from Dr. Schultz. The second Schultz affidavit responds to Dr. Foss's statements regarding the point at which Dr. Schultz conducted his aeration tests. Dr. Schultz repeated his aeration tests in a manner that addresses those criticisms, and reached substantially equivalent test results. Thus, the Foss criticisms of Dr. Schultz' testing methodology are not a basis for discarding the Schultz results.

■ Defendants also contend, by way of an affidavit from Mr. Kohlenberg, that Dr. Schultz' method of operation would have produced back pressure, which would have interfered with the normal operation of the air compressor, and thus produced inaccurate readings. Those contentions, in my view, go simply to the weight to be given to the Schultz affidavit and its opinions, not their admissibility.

I thus conclude that the Schultz affidavit is admissible.

Plaintiff, in turn, challenges the admissibility of the Foss and Kohlenberg affidavits. With regard to the Kohlenberg affidavit, plaintiff asserts that its opinions are inadmissible because: 1) its description of the operation of his device conflicts with that of defendants' expert, Dr. Foss; 2) its conclusions about the oxygen content of the air/water mixture before that mixture enters the inlet channel in the allegedly infringing device are unsupported by any valid scientific theories, testing, or calculations; 3) he is not competent to express his opinions on such subjects; and 4) those opinions are based on the new model of his device, rather than the allegedly infringing device.

■ For purposes of this opinion, I agree that Mr. Kohlenberg has not been shown to have the requisite education and experience to enable him to express opinions about the oxygen content of the

air/water mixture before it enters the inlet channel, and his opinions, as expressed in his affidavit, are insufficiently supported and, in any event, are not relevant because those opinions relate to a device that is not the subject of this litigation. To the extent, though, that his description of the operation of his device differs from that of Dr. Foss, that difference goes to the weight, not the admissibility of Dr. Foss's opinions.

 With regard to the Foss affidavit, plaintiff contends that there is no basis for Dr. Foss's findings and conclusions about the extent to which aeration occurs in the defendants' device before it enters the inlet channel. Dr. Foss's affidavit and opinions are not admissible, the plaintiff claims, because: 1) Dr. Foss did not test the allegedly infringing device in actual operation; and 2) though Dr. Foss claims aeration occurs before the air/water mixture enters the inlet channel, he does not assert that aeration is complete before doing so. Moreover, plaintiff also asserts, the Foss affidavit fails to respond to the findings and opinions in the Schultz affidavit—most particularly, the Schultz finding that aeration occurs in the inlet channel of the allegedly infringing device, as it does in the plaintiff's device.

To be sure, the Foss affidavit does not state specifically that "aeration does not occur in the inlet channel of the allegedly infringing device." But it does state that "the conditions for substantial mixing (or aeration) occur in two different parts of the two apparati: in the inlet channel of the '040 patent and in the air injection device of Kohlenberg." (Doc. 51, Foss Afft., ¶ 29). This suffices, even if not as precise as Dr. Schultz' opinion about aeration occurring in the inlet channels of both devices.

While plaintiff's arguments and the second Schultz affidavit raise questions about the reliability of Dr. Foss's conclusions, those questions are not sufficient, in my view, to foreclose consideration of those conclusions. The conflicting arguments about the accuracy of the underlying evaluation and testing procedures and the different results reached by each of the experts (whose bona fides as experts in their field cannot reasonably be questioned) are for the jury to sort out, rather than for me to resolve.

 In light of those affidavits, there is a genuine dispute of material fact—namely, whether, and the extent to which aeration occurs in the inlet chamber of the allegedly infringing device. Because there is a genuine dispute about a critical fact in this case, plaintiff's motion for summary judgment cannot be granted.

In light of the foregoing, it is

ORDERED THAT plaintiff's motion for summary judgment be, and the same hereby is denied.

A pretrial conference is set for September 10, 2002 at 10:30 a.m. to confirm the trial date, and to determine whether trial on the issue of damages shall be bifurcated from trial on the issue of liability, and to address such other matters as the parties desire to discuss at said conference.

So ordered.